UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHAWN ANDREA SIMS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:23-cv-01339 |
| NAVY FEDERAL CREDIT UNION, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Magistrate Judge's Report and Recommendation ("R&R") (Doc. No. 17) recommending that the Court grant in part and deny in part Navy Federal Credit Union's ("Navy Federal") Motion to Dismiss (Doc. No. 10). Shawn Andrea Sims ("Sims"), proceeding pro se, has filed objections to the R&R. (Doc. No. 22). For the following reasons, Sims' objections will be overruled, the R&R will be adopted in part and set aside in part, and this case will be dismissed.

**I.    BACKGROUND[1]**

The Court will not repeat the entire factual background and procedural history of this case because it is aptly set forth in the R&R. (Doc. No. 17 at 1–3). In short, Sims borrowed money from Navy Federal to purchase a vehicle, and Sims executed a "promissory note" to repay the loan amount. (Doc. No. 1 at 1). Sims asserts, however, that Navy Federal "tricked" him into entering this loan agreement by "omitting the true nature of the monetary system and the loan process." (Id. at 2; Doc. No. 1-1 at 5). This alleged "trick" is what some courts have called a "vapor money"

---

[1] The relevant background and facts necessary to resolve Sims' objections are drawn mostly from the "Bill of Complaint" and the attached "Memorandum of Laws in Support," which Sims filed at Doc. Nos. 1 and 1-1. For ease of reference, the Court will refer to these documents collectively as the "Complaint."

theory of liability.  See Demmler v. Bank One NA, 2006 WL 640499, at *4 (S.D. Ohio Mar. 9, 2006).  Under this theory, Sims alleges that his promissory note is the equivalent of money, and that Navy Federal failed to disclose that it took his money (i.e. his promissory note), deposited it into its own account without his permission, listed the note on its books as an asset, used bookkeeping or accounting procedures to "create[]" money from that asset, and then lent that money to Sims.  (Doc. Nos. 1 at 2; 1-1 at 1–4).  According to Sims, this means that he essentially traded his promissory note for Navy Federal's loan funds as "equal consideration," and that he should have received the loaned funds "free and clear" of any obligation to repay Navy Federal.  (Doc. Nos. 1 at 2; 1-1 at 1–4).

After Sims discovered Navy Federal's alleged deceit, he attempted to amend the loan agreement unilaterally.  (Doc. No. 1 at 1–2).  When that did not work, Sims sent Navy Federal a "notice of [his] intent to rescind" the loan agreement and get his promissory note back.  (Id.).  Sims alleges that Navy Federal refused to "return" his promissory note, and it continued sending "false and misleading statements" that Sims "still owed a debt" for the unpaid loan amount.  (Id. at 2).

As a result, Sims brought this lawsuit against Navy Federal for fraudulently inducing him to enter the loan agreement (Claim 1); violating the Rescission Act of 1946 and/or the Truth in Lending Act (Claim 2); defamation and libel for reporting that he owed a "canceled debt" (Claim 3); a breach of fiduciary duty (Claim 4); and various nonnumbered claims that the Court will address below.  (Doc. Nos. 1, 1-1).  Sims seeks $687 million in "civil money penalties," $25 million in punitive damages, $10 million in "Emotional Damages," an injunction requiring Navy Federal to "cease and desist" from reporting that he owes a debt for the unpaid loan amount, and

2

other costs.[2]  (See Doc. No. 1).  Navy Federal responded by filing the instant motion to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. Nos. 10, 11).

Sims did not file a response to Navy Federal's motion, and the Magistrate Judge entered an order for Sims "to show cause by November 25, 2024, why his claims should not be dismissed for failure to prosecute or for the reasons stated in the" motion.  (Doc. No. 12).  Sims again did not file a timely response.  The Magistrate Judge then entered his R&R on April 7, 2025.  (Doc. No. 17).  On April 21, 2025, Sims filed a document titled "Objections to Report and Recommendation and Response to Order to Show Cause."  (Doc. No. 22).

## II. THE MAGISTRATE JUDGE'S RECOMMENDED DISPOSITIONS

The Magistrate Judge recommends that the Court grant in part Navy Federal's motion to dismiss, and dismiss every claim except Sims' Truth in Lending Act ("TILA") claim.  (Doc. No. 17 at 11).  Specifically, the R&R recommends that the Court dismiss Sims' claim for fraud in the inducement because he "has not alleged any false statements made by Navy Federal in relation to the loan."  (Id. at 7–8).  It recommends that the Court dismiss Sims' claim under the Rescission Act of 1946 because this "budget bill reducing military funding to Filipino veterans after World War II . . . imposes no obligations on a credit union with respect to its customers."  (Id. at 8).  It recommends that the Court dismiss Sims' claim for defamation and libel because his allegation that "Navy Federal lied about me and had those lies published about me on my consumer report" is conclusory.  (Id.).  It recommends that the Court dismiss Sims' claim for breach of fiduciary duty because Tennessee law holds that banks have no fiduciary duty to their customers.  (Id.).  Last, it recommends that the Court dismiss all of Sims' other potential claims (except for the TILA

---

[2] The record reflects that the total amount of the loan was $30,399.00.  (See Doc. No. 22-1).

3

Case 3:23-cv-01339   Document 23   Filed 06/11/25   Page 3 of 10 PageID #: 101

claim) because they "exemplify shotgun pleading" and are "impossible to decipher." (Id. at 10–11).

As for the TILA claim, the R&R recommends that this claim should not be dismissed because Sims alleges that "Navy Federal never gave [him] the required disclosures or the forms and procedures to exercise that right." (Id. at 9 (citing Doc. No. 1-1 at 4)). Given that "TILA requires creditors who deal with consumers to make certain written disclosures concerning finance charges and related aspects of credit transactions," the Magistrate Judge recommends that Sims' TILA "claim is adequately pleaded and survives." (Id. at 9–10 (citations omitted)).

## III. SIMS' OBJECTIONS

Before addressing Sims' objections on the merits, it is worth emphasizing that "the purpose of objections to a report and recommendation is to focus the attention of the district court on possible errors of law or fact contained in the report, not to present new evidence and arguments that were not presented to the magistrate judge in the first instance." Issacs v. Smith, 2005 WL 1947811, at *5 (S.D.N.Y. Aug. 12, 2005). That is why the Federal Rules of Civil Procedure and this Court's Local Rules provide that only "specific written objections" to the magistrate judge's proposed factual findings and legal conclusions are considered "proper" for the district court's consideration. Fed. R. Civ. P. 72(b)(2). *Proper* objections also "must state with particularity the specific portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made . . . to apprise the District Judge of the bases for the objections." L.R. 72.02(a). "The district judge must determine de novo any part of the magistrate judge's disposition [on a dispositive motion] that has been *properly* objected to." Fed. R. Civ. P. 72(b)(2) (emphasis added). In doing so, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.; see also 28 U.S.C. § 636(b)(1)(C).

4

The rules distinguish between proper objections that deserve de novo review, and "vague, general, or conclusory objections," which do "not meet the requirement of specific objections and [are] tantamount to a complete failure to object." Cole v. Yukins, 7 F. App'x 354, 356 (6th Cir. 2001) (citing Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995)). When a litigant makes improper objections, "[t]he district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate [judge] useless." Howard v. Sec'y of Health and Human Servs., 932 F.2d 505, 509 (6th Cir. 1991). "The functions of the district court are effectively duplicated as both the magistrate [judge] and the district court perform identical tasks," and "[t]his duplication of time and effort wastes judicial resources rather than sav[es] them, and runs contrary to the purposes of the Magistrates Act." Id. "A district judge [also] should not have to guess what arguments an objecting party depends on when reviewing a magistrate's report." Id. (quoting Lockert v. Faulkner, 843 F.2d 1015, 1019 (1988)). With these standards in mind, the Court now turns to whether Sims' objections are proper or meritorious.

Sims starts off on the wrong foot by making a "General Objection" to the "Magistrate Judge's recommendation to dismiss under Rule 12(b)(6)," in which he claims that the recommendation "is premature," there are pending "requests for discovery," and "material facts remain disputed." (Doc. No. 22 at 1). He also argues generally that the R&R "overlooks material facts, established accounting and legal authorities, and the existence of pending discovery that is critical to the proper adjudication of the claims." (Id.). As the Court explained above, "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." Howard, 932 F.2d at 509. The Court will therefore overrule Sims' "General Objection" as procedurally improper.

Sims' remaining objections include separate section headings for each of his claims, and

each of those sections include a "Summary," "Key Omissions," and "Legal Authority" for his position. (See Doc. No. 22). The problem is that these sections do not state with specificity the legal or factual bases for assigning error to the R&R. For example, under the heading "CLAIM 1 – FRAUD IN THE INDUCEMENT," Sims states that the "Legal Authority" for his objection includes: "Proclamation 2039 – Franklin D. Roosevelt enacted a banking holiday to suspend banking operations. This has never been revoked or amended." (Doc. No. 22 at 1–2). He further argues under the heading "CLAIM 4 – BREACH OF FIDUCIARY DUTY" that Navy Federal's "conduct created a constructive trust," and that a 1919 New York state case allegedly held that "[c]onstructive trusts arise to prevent unjust enrichment." (Doc. No. 22 at 3–4 (citing Beatty v. Guggenheim Exploration Co., 225 N.Y. 380 (N.Y. Ct. App. 1919)). It is unclear how or why constructive trusts are relevant to the Magistrate Judge's conclusion that Navy Federal owed no fiduciary duty to Sims, particularly because "[u]nder Tennessee law, a constructive trust is a remedy, not an independent cause of action." See Boynton v. Headwaters, Inc., 2011 WL 13076900, at *3 (W.D. Tenn. Apr. 11, 2011).

Although the above examples reflect just a few reasons why Sims' objections are confusing, the Court has carefully reviewed the entirety of his objections and does not find any of them are proper. Instead, the objections largely repeat the Complaint's allegations and cite various cases and statutes of questionable relevance. What matters most, however, is that the objections fail to provide any nonconclusory basis for how the Magistrate Judge allegedly misapplied the law or failed to consider relevant factual allegations. Thus, these "objections" are not proper under Federal Rule 72(b)(2) or Local Rule 72.02(a).

Last, Sims includes two throwaway requests in his objections that the Court will summarily deny. First, he "requests that the Court compel production of the original promissory note to

confirm the absence of the mandatory FTC Holder Rule language." (Doc. No. 22 at 4). Putting aside the issue of whether the FTC Holder Rule is even relevant here, the Court denies this request because a motion to compel (as opposed to objections to a R&R) is the proper mechanism to seek this relief. Second, the Court denies Sims' request for "leave to amend the Complaint if necessary," which he makes in the concluding paragraph of his objections. (Id. at 5). The Sixth Circuit has held that such a "request for leave to amend almost as an aside" in a response brief is "not a motion to amend." See, e.g., La. Sch. Emps. Ret. Sys. v. Ernst & Young, LLP, 622 F.3d 471, 486 (6th Cir. 2010).

Accordingly, the Court will overrule Sims' objections, and it will approve and adopt the R&R's recommendation to dismiss every claim except for the TILA claim.

## IV. TRUTH IN LENDING ACT (TILA) CLAIM

Moving to the TILA claim, the Court liberally construes the Complaint as alleging that Sims is entitled to rescind his loan agreement under TILA because Navy Federal never notified him of "the required disclosures or the forms and procedures to exercise" his right to rescind the agreement. (Doc. No. 1-1 at 4). Congress enacted TILA "to promote the informed use of credit by consumers by requiring meaningful disclosure of credit terms." Barrett v. JP Morgan Chase Bank, N.A., 445 F.3d 874, 875 (6th Cir. 2006) (citation omitted). "To establish a claim [under TILA], the borrower must prove that the lender failed to disclose one of the enumerated items of information relating to the terms and conditions of the loan." Yaldu v. Bank of Am. Corp., 700 F. Supp. 2d 832, 840 (E.D. Mich. 2010).

When the Magistrate Judge initially found that Sims "adequately pleaded" a claim under TILA, he did not have the benefit of reviewing Navy Federal's "Truth-in-Lending Disclosure." (See Doc. No. 17 at 9–10). After the Magistrate Judge issued his R&R, however, Sims attached to his objections his "Member's Copy" of the loan agreement that included those disclosures. (See

7

Doc. No. 22-1). It is well settled in the Sixth Circuit that the Court may consider documents not attached to the Complaint "if they are referred to in the" complaint and are "central to" plaintiff's claim. Weiner v. Klais & Co., 108 F.3d 86, 90 (6th Cir. 1997), abrogated on other grounds by Swierkiewicz v. Sorema, 534 U.S. 506 (2002). The loan agreement between Sims and Navy Federal clearly satisfies this dual standard, and therefore the Court may consider that document in ruling on Navy Federal's motion to dismiss.

A creditor, like Navy Federal, must disclose certain "[r]equired . . . terms" under TILA, including "the identity of the creditor, 'the amount financed, the finance charge, the annual percentage rate, the payment schedule, information regarding the variable rate, the total payments and total sale price.'" Carter v. Freedom Mortg. Corp., 2023 WL 5154556, at *6 (M.D. Tenn. July 6, 2023) (quoting United States v. Petroff-Kline, 557 F.3d 285, 294 (6th Cir. 2009)); see also 12 C.F.R. §§ 226.17, 226.18. Here, Navy Federal's Truth-in-Lending Disclosure, which Sims signed, specifically disclosed the identity of the creditor (Navy Federal), the amount financed ("$30,399.00"), the finance charge ("$8,909.12"), the annual percentage rate ("8.69%"), the payment schedule ("71" payments of "$545.95" beginning "monthly" on March 17, 2022, and ending on February 17, 2028), information regarding the variable rate (a fixed rate), and the total payments ("$39,308.12"). (Doc. No. 22-1 at 1). Navy Federal was not required to disclose the "total sale price" of the car identified in the loan agreement (a 2019 Ford Fusion) because Sims does not allege that Navy Federal was the seller of the car. See 15 U.S.C. § 1638(a)(7) (providing that a creditor must disclose the "total sale price" "[i]n a sale of property or services *in which the seller is the creditor*") (emphases added). Accordingly, the Court does not find that Sims has alleged a plausible TILA claim based on Navy Federal's alleged failure to provide TILA's "[r]equired disclosure terms." See Carter, 2023 WL 5154556, at *6.

8

That brings the Court to Sims' allegation that "Navy Federal never gave [him] the required disclosures" regarding his "right to rescind" the loan agreement. (Doc. No. 1-1 at 4). The R&R correctly recognizes that TILA "provides for rescission of loans in some circumstances." (Doc. No. 17 at 9 (citations omitted). However, that "right to rescind" applies only "in the case of any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in *any property which is used as the principal dwelling* of the person to whom credit is extended." 15 U.S.C. § 1635(a) (emphases added); see also 12 C.F.R. § 1026.23(a)(1). "In other words, the TILA's right of rescission does not apply to car loans." Tedonzong v. Publix Employee Fed. Credit Union, 2023 WL 7492197, at *4 (N.D. Ga. Oct. 6, 2023); see also Stephens v. Reg'l Hyundai, LLC, 2022 WL 3139749, *2 (N.D. Okla. Aug. 5, 2022) ("The credit agreement in this case was for the purchase of an automobile and § 1635 is inapplicable, and the disclosures were not deficient [under TILA] due to an alleged failure to notify plaintiff of a right to rescind the contract."); Owens v. Cap. One Auto Fin., 2022 WL 19114, at *3 (M.D. Fla. Jan. 3, 2022) ("Plaintiff's claims regarding rescission are due to be dismissed. Plaintiff fails to allege any facts to demonstrate that she would have a right of rescission under 15 U.S.C. § 1635 and 12 C.F.R. § [1026.23], because there is no indication the [automobile] loan is secured by Plaintiff's principal dwelling."); West v. Wells Fargo Auto, 2023 WL 199676, at *3 (E.D. Pa. Jan. 17, 2023) ("Courts routinely hold that the right to rescind under § 1635(a) does not apply to the purchase of motor vehicles."). Given that the relevant credit agreement in this case was for the purchase of an automobile, not a principal dwelling,[3] Navy Federal's disclosures were not deficient under TILA merely because they did not notify Sims of his (nonexistent) right to rescind the contract. (See

---

[3] In this context, a "dwelling" is defined as "a residential structure that contains one to four units, whether or not that structure is attached to real property." 12 C.F.R. § 1026.2(a)(19).

9

Doc. No. 22-1 at 1 (noting that Sims is "pledging a security interest in the" 2019 Ford Fusion as "collateral" for the automobile loan)).

Accordingly, the Court does not find that Sims has alleged a plausible claim under TILA, and the R&R's recommendation that Sims' TILA claim "survives" will be set aside. (See Doc. No. 17 at 9–10).

## V. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The R&R (Doc. No. 17) is **APPROVED AND ADOPTED IN PART** and **SET ASIDE IN PART**.

2. Navy Federal's Motion to Dismiss (Doc. No. 10) is **GRANTED**, and this case is **DISMISSED WITH PRJUDICE**.

3. All other pending motions, including those filed at Doc. Nos. 8, 13, 14, 16, and 18, are **DENIED AS MOOT**.

This is a final order. The Clerk shall enter judgment in accordance with Federal Rule of Civil Procedure 58 and close the file. Sims is on notice that this Court is no longer the proper forum in which to raise arguments; if he disagrees with the Court's rulings, he may file an appeal with the United States Court of Appeals for the Sixth Circuit.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE